UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.S.,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br><br>        Defendant. | Case No. 3:19-cv-07543-JSC<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15 & 18 |

Plaintiff seeks social security benefits for physical and mental impairments including cervical radiculopathy with chronic neck and shoulder pain, lumbar facet arthropathy with chronic lumbar pain and radiculopathy, depression, anxiety, and complications arising from an electrocution. (*See* Administrative Record ("AR") 18.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his benefits claim. (Dkt. No. 1.)[1] Before the Court are Plaintiff's and Defendant's motions for summary judgment.[2] (Dkt. Nos. 15 & 18.) Because the Administrative Law Judge's ("ALJ's") weighing of Plaintiff's subjective pain testimony, third-party testimony, and medical opinions constitutes reversible error, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

**BACKGROUND**

Plaintiff filed an application for disability benefits under Title II of the Social Security Act (the "Act") on August 26, 2016, alleging a disability onset date of June 1, 2011, later amended to

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents

[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 3 & 8.)

March 11, 2011. (AR 201, 203.) His application was denied both initially and upon reconsideration. (AR 122, 128.) Plaintiff then submitted a written request for a hearing before an ALJ, and his hearing was held before ALJ Richard Laverdure on April 12, 2018. (AR 76.) An additional hearing was scheduled so Plaintiff could gather evidence relevant to Plaintiff's claims. (AR 84-86.) On August 8, 2019, a second hearing was held before ALJ Cheryl Tompkin. (AR 32, 34.) The ALJ issued a decision on November 13, 2018 finding that Plaintiff was not disabled. (AR 25.) The ALJ found that Plaintiff had the severe impairments of cervical radiculopathy with chronic neck and shoulder pain, lumbar facet arthropathy with chronic lumbar pain and radiculopathy, depression, and anxiety, but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R § 404, Subpart P, Appendix 1. (AR 18.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with certain limitations. (AR 21.) The ALJ concluded that Plaintiff was not disabled because, while he was unable to perform past relevant work, considering his RFC jobs existed in significant numbers in the national economy that Plaintiff could have performed. (AR 23.)

Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied review on September 25, 2019. (AR 1.) Plaintiff then sought review in this Court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross motions for summary judgment (Dkt. Nos. 15 & 18), which are now ready for decision without oral argument.

## ISSUES FOR REVIEW

1. Did the ALJ err in his evaluation of Plaintiff's subjective pain symptom testimony?
2. Did the ALJ err in his evaluation of third-party testimony regarding Plaintiff's pain symptoms?
3. Did the ALJ err in weighing Plaintiff's medical opinion evidence?

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

2

First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a severe "medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.R.F. §§ 404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id*. In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards." *Id*. A court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

**DISCUSSION**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's subjective pain symptom testimony, that the ALJ failed to provide germane reasons for not considering the testimony of certain third-parties, and that the ALJ erred in his evaluation of certain medical opinions. (Dkt. No. 15 at 14.) The Court agrees.

**I. Subjective Pain Symptom Testimony**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo*, 871 F.3d at 678. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (internal quotation marks and citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 22.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. The ALJ found no evidence of malingering, but found that the evidence did not support Plaintiff's statements "concerning the intensity, persistence, and limiting effects" of his symptoms because these statements were inconsistent with the medical evidence, and because there was an "absence of treatment" from Plaintiff's alleged disability onset date through October 2016. (AR 22.)

**A. Medical Evidence**

The ALJ's finding regarding Plaintiff's testimony being inconsistent with the medical evidence is not a clear and convincing reason supported by substantial evidence for rejecting

4

Plaintiff's symptom testimony. "General findings are insufficient" to discredit a claimant's symptom testimony; rather, to satisfy the "clear and convincing" standard "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citations omitted); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) ("[T]he ALJ must give specific, clear, and convincing reasons for rejecting the testimony by identifying *which* testimony [the ALJ] found not credible and explaining *which* evidence contradicted that testimony.") (internal quotation marks and citations omitted) (original emphasis and alterations removed). Moreover, it is improper for an ALJ to develop the evidentiary basis for discrediting a claimant's subjective pain symptom testimony by "not fully accounting for the context of materials or all parts of the testimony and [medical] reports." *Reddick*, 157 F.3d at 722-23. Here, while the ALJ briefly discussed Plaintiff's chronic pain, his testimony that he "must spend a day in bed once every one or two weeks," and testimony regarding his severe depression and memory problems,[3] the ALJ's discussion does not fully account for all of Plaintiff's testimony. (AR 21-22.) *See Reddick*, 157 F.3d at 722-23. For instance, the ALJ ignored that Plaintiff specifically testified he suffered pain "mostly in [his] lower lumbar, [his] left forearm down to [his] wrist, [his] waist all the way down to his calves, [but] not necessarily to [his] feet," and that "anytime [he] gripp[ed] anything, even lightly, [it was] extremely painful"—and that this pain affected even his ability to sign his name. (AR 43, 51.) Plaintiff testified that his lumbar pain required him to stand up and sit down every 15-20 minutes, and that having "something to lean on" made no difference at all in minimizing his pain while sitting or standing. (AR 46.) Plaintiff also testified that his ability to carry up to 30 pounds was not unlimited, and that where he "overextend[ed] [him]self" he was required to "literally lay[] down"—catatonically, in extreme cases—for up to 3 days. (AR 47.) At bottom,

---

[3] The ALJ also discussed testimony in which Plaintiff testified that "political circumstances" led him to stop working in 2011, testimony regarding his needs when walking over half a mile or sitting for 20 minutes, and his ability to lift 30 pounds. (AR 21-22.) The ALJ determined that there was no correlation between the "political circumstances" and Plaintiff's alleged disability, and that—while allegations regarding his limitations in walking and sitting were inconsistent with medical evidence—these were nonetheless discrepancies that the ALJ resolved in Plaintiff's favor by finding he "must alternate positions" when completing those tasks. (AR 22.)

the ALJ's characterization of Plaintiff's testimony was improperly generalized and neither "fully account[ed]" for Plaintiff's testimony, *Reddick*, 157 F.3d at 722-23, nor did she identify with the adequate specificity "*which* testimony [the ALJ] found not credible[,]" *Laborin v. Berryhill*, 867 F.3d at 1155 (original emphasis).

Further, the objective medical evidence reflects that the ALJ improperly cherry-picked evidence that supported her conclusion while ignoring medical evidence that contradicts her conclusion. *See Cotton v. Astrue*, 374 Fed. App'x. 769, 773 (9th Cir. 2010) (holding that an ALJ's "cherry-picking of [claimant's] histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding"); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."). In particular, in her discussion of Dr. Rana's "normal" examination the ALJ omits Dr. Rana's note that Plaintiff "present[ed] with chronic neck and back pain, most probably secondary to mild degenerative disc/degenerative joint disease" with "chronic fatigue/weakness." (AR 470.) The ALJ additionally found that Dr. Martin's mental status examination was "unremarkable." (AR 22.) However, Dr. Martin opined that Plaintiff showed "significant difficulty with sustained attention and/or mental tracking [which] indicate[d] a likelihood of possible neurocognitive impairment," and diagnosed Plaintiff with unspecified anxiety and depressive disorders and a mild neurocognitive disorder. (AR 464.) The ALJ's selective reliance on excerpts of these records that support her ultimate conclusion—while ignoring other excerpts regarding Plaintiff's pain, degenerative joint disease, possible neurocognitive impairment as well as depressive and anxiety disorders—did not "consider the evidence as a whole," *Williams*, 2015 WL 4507174, at *6, and was therefore in error.

Defendant argues that the ALJ properly "considered how consistent Plaintiff's statements were with the objective medical evidence[.]" (Dkt. No. 18 at 10.) According to Defendant, the ALJ identified that there was a "lack of consistency" between Plaintiff's subjective symptom testimony and the objective medical evidence, and therefore it was appropriate to discredit Plaintiff's testimony. (*Id.*) This argument, however, does not address the ALJ's failure to provide

6

clear and convincing reasons for the specific testimony he found not credible, *see Laborin*, 867 F.3d at 1155, and ignores the ALJ's "cherry-picking" of information from Dr. Rana's and Dr. Martin's reports, *see Cotton*, 374 Fed. App'x at 773.

### B. Absence of Treatment

The ALJ additionally discredited Plaintiff's subjective symptom testimony on the grounds that his allegations regarding the time he spent in bed per week, and his severe depression and memory problems were "inconsistent with the absence of treatment" from the alleged onset date to October 2016. (AR 22.) This too was erroneous.

While an ALJ "is permitted to consider lack of treatment in his credibility determination[,]" *Burch*, 400 F.3d at 681, an ALJ must also "consider and address reasons for not pursuing treatment that are pertinent to an individual's case[,]" SSR 16-3P. Here, Plaintiff testified that he was prescribed Cymbalta but stopped taking it due to its side effects; when asked if he has sought any other treatment, Plaintiff stated "not from that [prescribing] doctor because the insurance on that doctor ran out[.]" (AR 53.) Plaintiff also testified that he has "been trying to get [a neurology referral] for a long time," as well as that he has been "working on" requests for psychiatric referrals through his insurance program but that they are moving slowly. (AR 53-54.) In a Function Report completed for the Social Security Administration, Plaintiff additionally stated that he did not seek medical care during the relevant period because he "just accepted" his condition and "coped" through the years. (AR 252.) He also reported to Dr. Schweitzer that he did not seek treatment because he assumed his condition was a "new normal." (AR 477.) In sum, the ALJ's boilerplate conclusion that Plaintiff's symptom testimony was inconsistent with a lack of treatment did not address any reason Plaintiff provided for why he did not seek treatment for his pain or mental health complications during the relevant adjudicatory period. Moreover, a claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). As such, Plaintiff's inability to secure an alternative treatment to his Cymbalta because his insurance "ran out" cannot serve as a basis for discounting Plaintiff's subjective pain symptom testimony.

Defendant argues that the ALJ properly evaluated Plaintiff's testimony in light of this absence; however, this does not account for the ALJ's failure to "consider and address [Plaintiff's] reasons for not pursuing treatment." SSR 16-3P. Defendant's contention that the ALJ appropriately discounted Plaintiff's testimony because the ALJ determined that he is not currently taking any medications for his alleged mental impairments ignores the reasons Plaintiff provided for this circumstance, and moreover Plaintiff's failure to secure medication "during the period that he had no medical insurance cannot support an adverse credibility finding." *Orn*, 495 F.3d at 635.

\* \* \*

For the reasons set forth above, the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective pain symptom testimony.

**II.    Third-Party Testimony**

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis and citations omitted). An ALJ must provide "germane reasons for discrediting the testimony of lay witnesses." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *see also Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to *each* witness.") (emphasis added). "Inconsistency with medical evidence is one such reason." *Bayliss*, 427 F.3d at 1218.

Plaintiff challenges the ALJ's decision to discount the statements and testimony of Sharon Davis Bardy,[4] William Hendricks, and Social Security Claims Representative Wong.

**A.  Ms. Bardy**

The ALJ discredited Ms. Bardy's statements because they were "largely a repetition of [Plaintiff's] allegations and similarly inconsistent with the medical evidence of record." (AR 22.) This is not a germane reason for rejecting Ms. Bardy's statements. First, Ms. Bardy's statements

---

[4] The ALJ refers to Ms. Bardy as "Sharon Davis" in her decision. (AR 22.)

8

were not entirely repetitive of Plaintiff's allegations—for instance, she observed that Plaintiff could "no longer physically help with tasks" around their social club and that Plaintiff "gets sad about that." (AR 320.) She stated that it takes 2 hours for Plaintiff to write a "coherent paragraph" and that, in her own home, Plaintiff had twice "emotionally broken-down" and slept for 42 hours straight, as well as that his disability negatively affected his hygiene in specific ways she personally observed. (AR 319-321.) These observations were competent evidence the ALJ was required to consider in evaluating Plaintiff's symptoms. *See, e.g.*, *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) ("Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence.") (citation omitted); 20 C.F.R. § 404.1529(a) ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work.") Second, the ALJ's boilerplate reasoning to dismiss Ms. Bardy's statements "solely because [s]he found that [Plaintiff] was not credible suggests [s]he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." *Dodrill*, 12 F.3d at 919. At bottom, "the reasons germane to each witness must be *specific*[.]" *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (internal quotation marks and citation omitted) (emphasis added). The ALJ's only reason for discounting Ms. Bardy's statements is that they were repetitive of Plaintiff's testimony and inconsistent with the medical evidence. This "general statement[,]" however, fails to provide specific reasons for discounting Ms. Bardy's statements and "is not a valid ground to reject [them]." *Thomas v. Colvin*, No. ED CV 12-1241-PLA, 2013 WL 3935906, at *8 (C.D. Cal. July 29, 2013)

### B. Mr. Hendricks

The ALJ discredited Mr. Hendricks's testimony for the same reasons she discredited Ms. Bardy's statements: it was repetitive of Plaintiff's allegations and "inconsistent with the medical evidence of record." (AR 22.) At Plaintiff's hearing, Mr. Hendricks testified that he had seen Plaintiff "physically breakdown" after an hour of "relatively easy tasks," and that in one instance Plaintiff collapsed after 10 minutes of assisting Mr. Hendricks with handling a pool-cleaning

vacuum. (AR 57.) Mr. Hendricks also testified that Plaintiff cannot rake leaves, that Plaintiff has "an inability to sit through a [social] meeting[,]" and that these physical limitations were negatively affecting Plaintiff's mental health. (AR 58-59.)

As with Ms. Bardy, Mr. Hendricks's testimony was competent evidence the ALJ was required to consider, *Sprague*, 812 F.2d 1226, 1232, and the ALJ failed to provide germane reasons for specifically discounting Mr. Hendricks's testimony, *Bruce*, 557 F.3d at 1116. *See also Thomas*, 2013 WL 3935906, at *8 ( "[T]he ALJ did not identify which of the [third-party's] statements [were] unsupported by the medical evidence, or what medical evidence contradicts her statements. As such, this reason is not sufficiently specific to constitute a germane reason for rejecting her statements."). Defendant's argument that, because Mr. Hendricks's testimony "tracks" Plaintiff's allegations "very closely," the ALJ "was not required to provide independent reasons for discounting it" is unavailing. (Dkt. No. 18 at 12.) An ALJ may discount repetitious lay witness testimony only where "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117. The ALJ's reasons for rejecting Plaintiff's testimony were not well-supported. Furthermore, Mr. Hendricks's testimony was not repetitious. Because "lay witnesses can"—as Mr. Hendricks did—"make independent observations of the claimant's pain and other symptoms," *Dodrill*, 12 F.3d at 919, and the ALJ must treat their testimony as competent evidence, *Nguyen*, 100 F.3d at 1467, the ALJ's evaluation of Mr. Hendrick's testimony was in error.

**C.  Representative Wong**

The ALJ discredited statements from Representative Wong's functional report for the same reasons she discredited Ms. Bardy's statements: they were repetitive of Plaintiff's allegations and "inconsistent with the medical evidence of record." (AR 22.) In the report, Representative Wong described Plaintiff as "on edge and mentally unstable[,]" and noted that "[Plaintiff] had difficulty using his hands when signing the [Form] SSA 827." (AR 233.) The ALJ's analysis of these observations—and the reason provided for discounting them—was in error because "[an ALJ] will consider *any* statements in the record noted by agency personnel who previously interviewed the individual, whether in person or by telephone." SSR 16-3P (emphasis added). Defendant argues

1   that the ALJ was not required to discuss Representative Wong's notes, and that Representative
2   Wong's notes are "not subject to the rules on the treatment of medical opinions." (Dkt. No. 18 at
3   12 n.4.) Representative Wong is not a medical doctor; however, the ALJ was nonetheless required
4   to consider the observations recorded in his report. *See* 20 C.F.R. § 404.1529(c)(3) ("We will
5   consider all of the evidence presented, including . . . observations by our employees[.]"); SSR 16-
6   3P. Therefore, while the ALJ was not required to adopt Representative Wong's observations or
7   findings, she was required to at least consider them in her analysis. As such, the ALJ's conclusory
8   disregard for Representative Wong's functional report was in error, even if Defendant contends
9   the report's observations are at odds with the consultative physician's findings.

* * *

In sum, the Court finds that the ALJ committed legal error in discounting the testimony and statements of Ms. Bardy, Mr. Hendricks, and Representative Wong.

### III. Medical Opinions

In assessing an ALJ's consideration of the medical opinion evidence, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn*, 495 F.3d at 631.

An ALJ may reject the "uncontradicted opinion of a treating or examining doctor" only by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). That said, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those

of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence.") (alterations in original). Likewise, the opinions of nonexamining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

"As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted). Even if an examining physician's opinion is contradicted, an ALJ may only reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. (citation omitted). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. Ultimately, "[t]he ALJ must do more than offer his conclusions" when rejecting a medical opinion; instead, she "must set forth h[er] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

Plaintiff asserts the ALJ erred in evaluating the medical opinions of Dr. Martin, Dr. Rana, Dr. DuMouchel, Dr. Johnson and Dr. Schweitzer.

**A. Dr. Martin**

Dr. Martin examined Plaintiff on September 19, 2016, at the Department of Social Services' request. (AR 460.) The ALJ gave little weight to the opinion of Dr. Martin, because she found that Dr. Martin's conclusion regarding Plaintiff's "moderate to marked limitation[s]" were inconsistent with Dr. Martin's "normal psychiatric evaluation and [Plaintiff's] average intelligence

and memory test results." (AR 19-20.) Plaintiff contends that the ALJ erred in doing so because the entire examination was not "normal," and Dr. Martin's findings regarding Plaintiff's moderate to marked limitations in certain areas of functioning were supported by his evaluation. (Dkt. No. 15 at 25, AR 465.) The Court agrees.

Dr. Martin stated in his report that Plaintiff presented with an "anxious" affect. (AR 462.) While Dr. Martin determined that Plaintiff held "average" or "high average" WAIS-IV scores, indicating "intact cognitive abilities," Plaintiff's WMS-IV scores were consistent with his "memory difficulties" and reflected a "likely" decline in Plaintiff's premorbid abilities, reinforcing "discomfort and frustration due to [Plaintiff's] subjective struggles with memory problems[.]" (AR 463-64.) Dr. Martin's Trail Making Test—a "measure of general brain function"—showed that Plaintiff had "significant difficulty with sustained attention and/or mental tracking[.]" (AR 464.) Ultimately, Dr. Martin's diagnostic impression included diagnoses of unspecified anxiety disorder, unspecified depressive disorder, and mild neurocognitive disorder due to "multiple etiologies[.]" (AR 464.) His prognosis: Plaintiff's "psychiatric symptoms may diminish with mental health treatment, although no significant changes are likely to occur within the next 12 months." (AR 465.) From these assessments Dr. Martin determined that Plaintiff had "moderate" limitations in his ability to perform work activities on a consistent basis and deal with the usual stresses of a competitive work environment, as well as "marked" limitations in his ability to complete a normal workday or work week without interruptions. (AR 465.)

Defendant argues that the ALJ was correct to discredit Dr. Martin's opinion because Dr. Martin's examination recorded "normal mental status examination results"—however, Defendant fails to address Dr. Martin's diagnostic impressions or the results of Plaintiff's Trail Making Test. (Dkt. No. 18 at 14.) Dr. Martin's assessments regarding Plaintiff's work-related limitations are consistent with the results of his analyses. Because they are the results of "objective clinical tests," Dr. Martin's medical opinion constitutes substantial evidence. *Magallanes*, 881 F.2d at 751; *see also Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). Given the consistency of Dr. Martin's medical opinion with his assessments' results, the ALJ failed to provide an adequate rationale for discrediting it. *See Lester*, 81 F.3d at 830 (citation omitted).

13

### B. Dr. Rana

The ALJ gave great weight to Dr. Rana's opinion and functional capacity assessment, and largely adopted her opinion in determining that Plaintiff was limited to "medium work with no additional limitations." (AR 18-19, 470.) The ALJ found that Dr. Rana's opinion was supported by her "thorough" physical examination of Plaintiff and the absence of medical treatment from the alleged onset date to the date of Dr. Rana's examination. (AR 18.) Plaintiff contends that the ALJ should have afforded Dr. Rana's opinion no weight because she only met Plaintiff once for a 10-minute appointment that did not rely on the review of any medical records or objective imaging reports. (Dkt. No. 15 at 25.) However, there is no requirement that an examining physician review medical records prior to rendering an opinion or that the opinion cannot be based on the physical examination. To the contrary, the examining physician's opinion can alone constitute substantial evidence, where it rests on that physician's own independent examination of the Plaintiff. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Accordingly, the ALJ provided a specific and legitimate reason supported by substantial evidence for giving great weight to Dr. Rana's opinion.

### C. Dr. DuMouchel

Regarding Dr. DuMouchel's medical evaluation (AR 498), the ALJ was only required to give "germane reasons" for rejecting his opinion because "a chiropractor is not an acceptable medical source," but is instead an "other" source entitled to less deference. *Sanfilippo v. Astrue*, 274 F. App'x 551, 553 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1513(a)); *see also* 20 C.F.R. § 404.1513(d). "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (9th Cir. 2012) (internal quotation marks and citation omitted). The ALJ rejected Dr. DuMouchel's opinions because (1) he was not an acceptable medical source and (2) "his examination [was] too remote from the relevant period[.]" (AR 19.) However, "the ALJ is not permitted to reject [a chiropractor's] opinion solely on the basis that, as a chiropractor, he is not a medical source." *Rose v. Colvin*, No. SACV 14-0155-DFM, 2014 WL 3899497, at *2 (C.D. Cal. Aug. 11, 2014) (citations omitted); *see*

14

*also* SSR 06-03P.  Additionally, "reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citation omitted).  Accordingly, the ALJ failed to provide germane reasons for discounting Dr. DuMouchel's opinions.  *See, e.g.*, *Bruce*, 557 F.3d at 1116.

### D.  Dr. Johnson

On February 12, 2018, Dr. Johnson performed a SPECT scan evaluation on Plaintiff.  (AR 524.)  Dr. Johnson determined that the evaluation "revealed extensive brain pathology," and diagnosed Plaintiff with: "Electrocution, Concussion with loss of consciousness, major depression and Posttraumatic Stress Disorder."  (AR 524.)  The ALJ gave no weight to the opinions of Dr. Johnson because Dr. Johnson's opinions regarding the evaluation's results were "reliant upon [Plaintiff's] subjective complaints," and because the examination was "too remote from the relevant period[.]"  (AR 20.)   Plaintiff contends that the ALJ erred in assigning Dr. Johnson's medical opinions no weight because the opinions relied on "brain scan images," and that the ALJ failed to indicate that Plaintiff's condition had deteriorated to a degree that Dr. Johnson's February 2018 SPECT scan evaluation would not be relevant to Plaintiff's disability determination.  (Dkt. No. 15 at 28.)

First, the ALJ erred in determining that Dr. Johnson's opinions were "reliant" on Plaintiff's subjective complaints.  His report makes direct references to the SPECT scan's results and provides copies of its images; for instance, Dr. Johnson's clinical findings include the determinations that Plaintiff had a "diamond plus pattern (increased anterior cingulate, basal ganglia, limbic)" and "generalized atrophy along the frontal surface[.]"  (AR 525-26, 539, 541.)  Therefore, Dr. Johnson's opinion constitutes substantial evidence "because it rests on his own independent examination of [Plaintiff]." *Tonapetyan*, 242 F.3d at 1149; *see also Magallanes*, 881 F.2d at 751.  Second, "reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith*, 849 F.2d at 1225 (citation omitted); *see also Lester*, 81 F.3d at 832 ("[M]edical evaluations made after the expiration of a claimant's insured status  are relevant to an evaluation of the preexpiration condition.") (internal quotation marks and citation omitted).  "It is obvious that medical reports are inevitably rendered retrospectively and

15

should not be disregarded solely on that basis." *Tonapetyan*, 242 F.3d at 1149  (citation omitted).[5]

Accordingly, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Johnson's opinions.

### E.  Dr. Schweitzer

The ALJ gave little weight to the opinion of Dr. Schweitzer, Plaintiff's treating physician, because she found that Dr. Schweitzer's "Medical Source Statement" was "inconsistent with the medical evidence of record."  (AR 19, 542.)  Plaintiff contends that the ALJ erred in doing so because Dr. Schweitzer relied on objective medical findings in forming her opinions, and that her opinions regarding Plaintiff's inability to "sustain[] sedentary work" were consistent with other medical evidence.  (AR 19, Dkt. No. 15 at 29.)  The Court agrees.

The ALJ erred in determining that Dr. Schweitzer's opinions in the June 12, 2018 assessment were inconsistent with the medical evidence of record.  Dr. Schweitzer's determination that Plaintiff suffered chronic pain in his neck, back, and extremities finds support in Dr. Rana's opinion that Plaintiff "present[ed] with chronic neck and back pain, most probably secondary to mild degenerative disc/degenerative joint disease" with "chronic fatigue/weakness."  (AR 470, 542.)  Dr. Schweitzer stated that Plaintiff suffered "poor energy, poor memory, anhedonia, [and] anxiety."  (AR 542.)  Dr. Johnson similarly opined that Plaintiff's SPECT scan results indicated brain damage that "would greatly impair concentration, organization, impulse control, advance planning and mood stability."  (AR 524.)  The ALJ points to treatment notes from an October 10, 2016 exam of Plaintiff by Dr. Schweitzer as an illustration of this inconsistency, stating that Dr. Schweitzer's examination was "normal."  (AR 19.)  However, Dr. Schweitzer's October 10, 2016

---

[5] Defendant argues the ALJ additionally reasoned that Plaintiff's "actual test results showed performance in the normal range," and that this was another basis for discounting Dr. Johnson's medical opinion.  (Dkt. No. 18 at 15 (emphasis removed).)  However, the only reasons the ALJ provided for discounting Dr. Johnson's opinion were (1) his reliance on Plaintiff's subjective complaints, and (2) the remoteness of the SPECT scan to the "relevant period in this case."  (AR 20.)  The Court, therefore, does not address Defendant's additional argument. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ[.]") (citation omitted).

16

examination assessed Plaintiff with "chronic neck pain," "chronic lumbrosacral pain," "chronic pain of both upper extremities," and "depression[.]" (AR 477-78.) Dr. Schweitzer also ordered x-rays of Plaintiff's lower spine and neck spine. (AR 481.) In sum, Dr. Schweitzer's October 10, 2016 treatment notes are not inconsistent with her June 12, 2018 assessment. (AR 477-78, 542-48.)

Dr. Schweitzer is Plaintiff's treating physician. Therefore, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting her medical opinions on the basis of inconsistencies in the medical evidence of record. *See Barney v. Berryhill*, 769 F. App'x 465, 465-66 (9th Cir. 2019); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Given that Dr. Schweitzer's June 12, 2018 assessment is consistent with other medical evidence, the ALJ's conclusory statement that her opinion is "inconsistent with the medical evidence of record" does not constitute specific and legitimate reasons supported by substantial evidence for discounting her opinion.

\* \* \*

For the reasons set forth above, the Court finds that the ALJ committed legal error in discounting the medical opinions of Dr. Martin, Dr. DuMouchel, Dr. Johnson, and Dr. Schweitzer, but that the ALJ did not err in her weighing of Dr. Rana's medical opinion.

**IV.   Remand**

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When reversing an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595. Remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels*, 874 F.3d at 668 (internal quotation marks and citation omitted).

The first prong of the test is not satisfied here. For instance, further proceedings would

17

determine the proper weight to assign Dr. DuMouchel's chiropractic opinions, and what possible reasons, if any, explain Plaintiff's absence of treatment during the relevant adjudicatory period. Accordingly, the record must be more fully developed, and further proceedings would serve a useful purpose.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Dkt. Nos. 15 & 18.

**IT IS SO ORDERED.**

Dated: January 29, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge